IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

---

JOSEPH SHAW, JR.

      Petitioner,

v.                                  No. 1:13-cv-01237-JDB-egb

GRADY PERRY,

      Respondent.

---

ORDER DIRECTING CLERK TO SUBSTITUTE RESPONDENT,
DENYING § 2254 PETITION,
DENYING A CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

---

Joseph Shaw, Jr., was convicted of sexual battery and rape following a jury trial in the Madison County Circuit Court in Jackson, Tennessee. After unsuccessfully appealing his conviction and sentence, he sought state post-conviction relief, which was denied. Proceeding *pro se*, Shaw now seeks federal habeas corpus relief challenging his conviction and sentence pursuant to 28 U.S.C. § 2254. For the reasons discussed below, the § 2254 petition is DENIED.[1]

## LEGAL STANDARDS

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

---

[1] The Clerk is DIRECTED to record Respondent as Grady Perry.

1.  <u>Merits Review</u>

Under the AEDPA, habeas relief is available only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A § 2254 claim challenging the petitioner's custody or sentence on state-law grounds thus fails to state a federal habeas claim. *Moreland v. Bradshaw*, 699 F.3d 908, 926 (6th Cir. 2012) (writ of habeas corpus may not issue "on the basis of a perceived error of state law") (citing *Pulley v. Harris,* 465 U.S. 37, 41 (1984)).

The availability of federal habeas relief is further restricted where the petitioner's claim was "adjudicated on the merits" in the state courts. 28 U.S.C. § 2254(d). In that circumstance, federal habeas relief "may not be granted" unless:

> the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of [the Supreme] Court, [28 U.S.C.] § 2254(d)(1); *Williams v. Taylor,* 529 U.S. 362, 412 (2000); or . . . "involved an unreasonable application of" such law, § 2254(d)(1); or . . . "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

*Harrington v. Richter*, 562 U.S. 86, 100 (2011).

A state court's decision is "contrary" to federal law when it "arrives at a conclusion opposite to that reached" by the Supreme Court on a question of law or "decides a case differently than" the Supreme Court has "on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. An "unreasonable application" of federal law occurs when the court "identifies the correct governing legal principle from" the Supreme Court's decisions "but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

There is little case law addressing the "unreasonable determination of the facts" standard of § 2254(d)(2). The Supreme Court has explained, however, that a state court's factual determination is not "unreasonable" merely because the federal habeas court would have reached

a different conclusion. *See Wood v. Allen*, 558 U.S. 290, 301 (2010). Although the Sixth Circuit has described the standard as "demanding but not insatiable," it construes the standard in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (quotation marks and citation omitted).

2. Exhaustion and Procedural Default

Before a federal court will review the merits of a claim brought under § 2254, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The exhaustion provision is "designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

In light of this purpose, the Supreme Court has interpreted the exhaustion provision as requiring not mere "technical" exhaustion, *Coleman v. Thompson,* 501 U.S. 722, 732 (1991), but "proper[]" exhaustion. *Boerckel*, 526 U.S. at 848. A claim is technically exhausted when state remedies are no longer available to the petitioner. *Coleman*, 501 U.S. at 732 (citing 28 U.S.C. § 2254(b)). Technical exhaustion therefore encompasses not only situations where the petitioner fully presented his claim to the state courts, but also instances where the prisoner did not present his claim to the state courts at all or failed to present it to the highest available court, and the time for doing so has expired. *Boerckel*, 526 U.S. at 848; *Wood v. Ngo*, 548 U.S. 81, 92-93 (2006). If federal habeas courts were generally allowed to review such claims, the exhaustion provision's purpose of giving the state courts the first opportunity to resolve federal constitutional issues would be "utterly defeated." *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). "To avoid this result, and thus protect the integrity of the federal exhaustion rule," a claim must be "properly"

exhausted, meaning it must be "fairly presented" through "one complete round of the State's established appellate review process." *Boerckel,* 526 U.S. at 845, 848.

The exhaustion requirement works in tandem with the procedural-default rule, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts. *Id.* at 848. Broadly speaking, procedural default happens in two ways. A petitioner procedurally defaults his claim where he fails to properly exhaust available remedies (that is, fails to "fairly present" the claim through "one complete round" of the state's appellate review process), and he can no longer exhaust because a state procedural rule or set of rules have closed-off any "remaining state court avenue" for review of the claim on the merits. *Harris v. Booker*, 251 F. App'x 319, 322 (6th Cir. 2007). *See also Boerckel*, 526 U.S. at 846, 848. Procedural default also occurs where the state court "actually . . . relie[s] on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). To cause a procedural default, the state court's ruling must "rest[] on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman*, 501 U.S. at 729.

It is only when the petitioner shows "cause for the default and actual prejudice as a result of the alleged violation of federal law," or demonstrates that "the court's failure to consider the claim[] will result in a fundamental miscarriage of justice," that a federal court will review the merits of a claim that was procedurally defaulted. *Coleman*, 501 U.S. at 750 (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). The ineffectiveness of post-conviction counsel may be cause to excuse the default of an ineffective-assistance-of-trial-counsel claim. *Trevino v. Thaler*, 133 S. Ct. 1911, 1918 (2013); *Martinez v. Ryan*, 132 S. Ct. 1309 (2012); *Hodges v. Colson*, 727 F.3d 517, 531 (6th Cir. 2013). A fundamental miscarriage of justice is met "where a prisoner

asserts a claim of actual innocence based upon new reliable evidence." *Bechtol v. Prelesnik*, 568 F. App'x 441, 448 (6th Cir. 2014).

**BACKGROUND**

The following background summary is drawn from the TCCA's recitation of the evidence at Shaw's trial. *See State v. Shaw*, No. W2009-02326-CCA-R3-CD, 2010 WL 338499, at *1 (Tenn. Crim. App. Aug. 27, 2010).[2]  The procedural facts are drawn from the state court record filed by Respondent.  (*See* ECF No. 19.)

1. Shaw's Trial

Shaw was charged with sexual battery and rape of a thirteen-year-old girl.  The girl testified at trial that at the time of the incident Shaw was her mother's boyfriend.  On August 30, 2008, at her mother's request, Shaw brought food to the daughter at her home.  The girl, who was dressed in her pajamas and wrapped in a blanket, ate her meal while on the sofa watching television.  Shaw ate his meal at the table.  When he got up to leave, he "knelt down on the floor beside" the girl "and started talking."  *Shaw*, 2010 WL 338499, at *1.  After the girl told him to leave, he attacked her, "grabbing her breasts and buttocks and penetrating her labia with his fingers."  *Id.*  The girl screamed and kicked, and Shaw put a shirt over her mouth.  Shaw ran out the apartment when the girl received a phone call from her cousin.  After speaking with her cousin, the girl called her friend and told her what had happened.  The friend's mother then contacted the victim's mother.  *Id.* at *1-2.

At trial, the girl "identified on an anatomical drawing where the defendant had touched her, circling the buttocks, breast, and pubic areas of the drawing."  *Id.* at *2.  She testified that

---

[2] Citations to the TCCA's published opinions in Shaw's case will be in Westlaw citation format only and will not include the ECF docket numbers.

Shaw's "fingers touched the inside of [her] lips just a little bit." *Id.* (quotation marks omitted, alteration in original). The girl "also demonstrated on an anatomically correct doll where the defendant had penetrated her with his fingers." *Id.*

When cross-examined, the girl "acknowledged that she did not call 911, or her mother, that she told her cousin that everything was okay, and that none of her neighbors came to check on her." *Id.* She also "agreed that she testified at the preliminary hearing that the defendant had not penetrated her but then changed her answer after meeting with someone from the prosecutor's office." *Id.* She also testified that prior to the defendant's attack, the defendant had insulted her by saying that the singer Chris Brown, whom she liked, would never date a fat girl like her. *Id.*

The girl's mother testified that after she was informed of the incident, she "head[ed] home, calling the police, an ambulance, and the defendant en route." *Id.* at *3. When she arrived at her apartment, Shaw was outside. Shaw "initially" told the mother "that he had not touched the victim but later admitted that he had touched the victim's breasts and buttocks." *Id.* When the mother asked Shaw why, "he never gave her an answer." *Id.* On cross-examination, the mother acknowledged that in her statement to police she said that Shaw had told her that the touching "occurred while [Shaw and the girl] were playing." *Id.* The mother also testified that the girl had said at the preliminary hearing that Shaw had not penetrated her "because she thought, at the time, that penetration required insertion into the actual vagina." *Id.* She said "that she and the victim did not learn otherwise until they were instructed by the prosecutor." *Id.*

A Jackson Police investigator testified that the girl's "account of the crime in the statement she took from her was consistent with the account she provided at trial." *Id.* When cross-examined, the investigator "acknowledged that the victim mentioned nothing in her

statement about the Chris Brown exchange or the defendant's having touched her thigh." *Id.*

Shaw testified that the girl had attacked him because of his Chris Brown comment, that any

touching of the girl was unintentional, and that he did not penetrate her vagina. *Id.* at *3-4.

When called to the stand in rebuttal, the girl denied that she had attacked Shaw. *Id.* at *4.

The jury convicted Shaw of sexual battery and rape. The court merged the sexual battery

conviction into the rape conviction. After applying the "private trust" enhancement factor under

state law, the trial court sentenced Shaw to eleven years' imprisonment. *Id.*

## 2. Post-Trial Proceedings

Shaw appealed his conviction and sentence to the TCCA. *See id.* at *1. The TCCA

denied relief, *id.*, and the Tennessee Supreme Court denied permission to appeal (ECF No. 19-

12). Shaw thereafter filed a post-conviction petition seeking relief from his conviction and

sentence on numerous grounds. (ECF No. 19-13 at 5-7.) After an evidentiary hearing, the post-

conviction court denied relief. (ECF No. 19-13 at 20-26.) Shaw appealed and the TCCA

affirmed the lower court's decision. *Shaw v. State*, No. W2012-00630-CCA-R3-PC, 2013 WL

1385006, at *1 (Tenn. Crim. App. Apr. 4, 2013). The Tennessee Supreme Court denied

permission to appeal. (ECF No. 19-20.)

## 3. Shaw's § 2254 Petition

Shaw raises five grounds for habeas relief, one of which consists of three sub-claims.

The claims are:

- Claim 1: Ineffective Assistance of Counsel Based on Trial Counsel's Failure to Strike
  Juror Brooks

- Claim 2: Ineffective Assistance of Counsel Based on Trial Counsel's Failure to Call
  Character Witnesses

- Claim 3: Denial of Fair Trial and Impartial Jury

- Claim 4(A): Insufficiency of the Evidence to Convict

- Claim 4(B): Admission of a Prior Consistent Statement Without a Limiting Instruction

- Claim 4(C): Excessive Sentencing

- Claim 5: Ineffective Assistance of Counsel Based on Trial Counsel's Failure to Warn Petitioner About the Lifetime Community Supervision Requirement

(ECF No. 1 at 3-4.) Respondent argues that several of the claims are barred under the procedural-default doctrine and the remaining claims are without merit. (ECF No. 20 at 13-27.)

## DISCUSSION

1. <u>Claim 1</u>**:** <u>Ineffective Assistance of Counsel Based on Trial Counsel's Failure to Strike Juror Brooks</u>

Shaw alleges that he "received ineffective assistance of counsel because counsel failed to challenge . . . juror" Brooks "who was previously acquainted with" him. (ECF No. 1 at 3.) Shaw raised this ineffective-assistance issue in the post-conviction court. (ECF No. 19-13 at 7.) The court heard testimony from Shaw, juror Brooks, and Shaw's trial attorney. (ECF No. 19-13 at 23-25.) The court found that trial counsel had not been ineffective (*see id.* at 25), and the TCCA affirmed that ruling. *See Shaw*, 2013 WL 1385006, at *1. Because Shaw presented this ineffective-assistance issue to the TCCA, he properly exhausted his state remedies. *See Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (under Tenn. S. Ct. Rule 39, a Tennessee prisoner exhausts his claim by raising it before the TCCA). The claim is therefore reviewable in this habeas proceeding.

A claim that the ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To succeed on this claim, a movant must demonstrate two elements:

(1) that counsel's performance was deficient, and (2) "that the deficient performance prejudiced the defense." *Id.* "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a person challenging a conviction "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range of reasonable professional assistance." *Id.* at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 694.

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' . . . Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Richter*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 687, 693).

The deference to be accorded a state-court decision under 28 U.S.C. § 2254(d) is magnified when reviewing an ineffective assistance claim:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles* [*v. Mirzayance*], 556 U.S., at 123, 129 S. Ct. at 1420 [(2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123, 129 S. Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with

unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Richter*, 562 U.S. at 105.

Addressing Shaw's contention that trial counsel had rendered ineffective assistance with regard to juror Brooks, the TCCA recounted the testimony given at the post-conviction hearing:

> At the post-conviction hearing, the Petitioner testified that during voir dire, he recognized one of the potential jurors, Tony Brooks. According to the Petitioner, he went to high school with Mr. Brooks and later worked at a factory with Mr. Brooks sometime in the mid–1970s. The Petitioner testified that he and Mr. Brooks were not friends but that they "just kind of [knew] one another." The Petitioner further claimed that he and Mr. Brooks had "a liking for the same young lady" when they worked together and that he believed that caused Mr. Brooks to be biased against him. The Petitioner testified that he told trial counsel that Mr. Brooks had lied about knowing him but that trial counsel failed to "call [Mr. Brooks] out ." Mr. Brooks was eventually selected as a juror and served as foreman of the jury.
>
> * * *
>
> Mr. Brooks testified that he served as jury foreman at the Petitioner's trial. Mr. Brooks testified that he went to the same high school as the Petitioner but that he did not recall being in the same class with the Petitioner. Mr. Brooks also testified that he worked at the same factory as the Petitioner but that he did not recall working with the Petitioner. Mr. Brooks also did not recall dating the woman that the Petitioner claimed they competed over. Mr. Brooks testified that when asked during voir dire if he knew the Petitioner, he stated that he did not because he genuinely did not recognize the Petitioner or recall knowing him. Mr. Brooks testified that it had been almost forty years since he was in high school and had worked at that particular factory, so any memories he had from back then were "very vague." Mr. Brooks further testified that his verdict was based upon the evidence at trial and not "on whether or not [he] knew [the Petitioner]."
>
> The Petitioner's brother, Otis Shaw, testified that prior to the post-conviction hearing, Mr. Brooks approached him, asked him how he was doing, and shook his hand. Mr. Shaw testified that he grew up with Mr. Brooks and that Mr. Brooks knew his "whole family," including the Petitioner. Mr. Brooks did admit that he had "seen [Mr. Shaw] before" but that he did not know him well enough to know his name. Mr. Brooks admitted that prior to the post-conviction hearing he said, "Hey, there," and shook Mr. Shaw's hand but testified that he would "greet [anybody] the same" way. Mr. Shaw testified that he did not know of any reason why Mr. Brooks would be biased against the Petitioner.

\* \* \*

Trial counsel testified that during voir dire, the Petitioner "indicated that he believed he knew Mr. Brooks and that Mr. Brooks should have known him." Trial counsel asked the Petitioner if "he had any hard feelings towards Mr. Brooks," and the Petitioner said no. Trial counsel also asked the Petitioner "if he wanted [trial counsel] to excuse Mr. Brooks and he said no."

*Shaw*, 2013 WL 1385006, at \*1-2.

The TCCA applied the two-part *Strickland* test to these facts and concluded that Shaw's counsel had not rendered ineffective assistance with regard to juror Brooks:

Following the hearing, the post-conviction court denied the Petitioner post-conviction relief. In its written order, the post-conviction court accredited Mr. Brooks's testimony that he had no bias against the Petitioner because he did not remember him. The post-conviction court also accredited trial counsel's testimony that the Petitioner said no when he was asked if he wanted Mr. Brooks removed from the jury. As such, the post-conviction court concluded that the issue was without merit

\* \* \*

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see Lockhart v. Fretwell,* 506 U.S. 364, 368–72, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

\* \* \*

The Petitioner has failed to establish by clear and convincing evidence that trial counsel's performance was deficient. Mr. Brooks testified that, while he went to the same high school as the Petitioner and had worked at the same factory as the Petitioner, he did not recall the Petitioner and genuinely believed that he did not know the Petitioner when asked at voir dire. Additionally, Mr. Brooks testified that he had no reason to be biased against the Petitioner and that his verdict was based solely upon the evidence presented at trial. Furthermore, trial counsel testified that, when asked, the Petitioner said that he did not want Mr. Brooks removed from the jury and that there were no "hard feelings" between the two.

*Id.* at \*3-4.

Shaw has not shown that he is entitled to relief under the AEDPA on Claim 1. First, the TCCA's determination was not "contrary to" *Strickland*, 28 U.S.C. § 2254(d)(1), because the TCCA expressly invoked *Strickland* and applied its two-part test to the facts. *See Williams*, 529 U.S. at 406 (A "state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.")

Second, the TCCA's ineffective-assistance determination was not based on an unreasonable determination of the facts or an unreasonable application of *Strickland*'s standards to those facts. *See* 28 U.S.C. §§ 2254(d)(1) and (2). The factual findings that Brooks was not biased against Shaw and that Shaw told his trial counsel that he did not want Brooks removed from the jury are reasonable factual determinations; the TCCA was entitled to defer to the lower court's decision to accredit the testimonies of trial counsel and Brooks over the testimony of Shaw. *See Rice v. Collins,* 546 U.S. 333, 341-42 (2006) ("Reasonable minds reviewing the record might disagree . . . but on habeas review that does not suffice to supersede the trial court's credibility determination."). The state court's factual determination is entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary, *see* 28 U.S.C. § 2254(e)(1), which Shaw has not submitted. Based on the supportable factual findings, the TCCA reasonably concluded that counsel did not perform deficiently by failing to object to Brooks' presence on the jury.

Because the TCCA's ineffective-assistance determination was not unreasonable, Claim 1 is DENIED.

2. Claim 2: Ineffective Assistance of Counsel Based on Trial Counsel's Failure to Call Character Witnesses

Shaw alleges that his counsel's failure "to call several witnesses to testify as to [his] character" constituted ineffective assistance of counsel. (ECF No. 1 at 3.) More specifically, he claims that his counsel should have interviewed and called as character witnesses Harry Jenkins (now deceased), his widow Georgia Jenkins, Shaw's friend Patricia Mercer, and Shaw's sister Betty Shaw. (*Id.*). The inmate raised this ineffective-assistance issue in the post-conviction court. (*See* ECF No. 19-13 at 7.) The court heard testimony from Shaw, his trial attorney, Georgia Jenkins, and Betty Shaw. (*See* ECF No. 19-13 at 23-25.) The post-conviction trial court found that trial counsel had not rendered ineffective assistance, (*see id.* at 25), and the TCCA affirmed that ruling. *See Shaw*, 2013 WL 1385006, at *4. Because Shaw presented this issue to the TCCA, the claim was properly exhausted. *See Adams*, 330 F.3d at 402. This contention is therefore reviewable on the merits in this habeas proceeding.

Under *Strickland,* defense counsel has a "duty to make reasonable investigations" in preparation for sentencing or "to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691; *see also Morris v. Carpenter*, 802 F.3d 825, 843 (6th Cir. 2015) ("An attorney's failure to reasonably investigate the defendant's background and present mitigating evidence to the jury at sentencing can constitute ineffective assistance of counsel.") (quoting *Goodwin v. Johnson,* 632 F.3d 301, 318 (6th Cir. 2011)). A criminal defendant alleging prejudice from trial counsel's failure to properly investigate and present mitigating evidence at sentencing must show that there is a "reasonable probability" that the mitigating evidence not presented would have changed the outcome. *Strickland,* 466 U.S. at 694. *See also Morris*, 802 F.3d 825 at 843 (habeas petitioner claiming that trial counsel was ineffective in investigating and presenting mitigating evidence at sentencing "must present new

evidence that differs both in strength and subject matter from the evidence actually presented at sentencing").

Addressing Shaw's contention that trial counsel had rendered ineffective assistance by not calling character witnesses at sentencing, the TCCA recounted the testimony given at the post-conviction hearing:

> The Petitioner . . . testified that trial counsel failed to investigate and call several witnesses that the Petitioner wanted to testify about his character and "stuff [of] that nature." These witnesses included his neighbors Harry and Georgia Jenkins, his sister Betty Shaw, and his "lady friend" Patricia Mercer. However, the Petitioner testified that he never asked trial counsel to call the witnesses or gave trial counsel their names.
>
> * * *
>
> Georgia Jenkins testified that she was the Petitioner's neighbor and that she would have testified at trial that he was "not violent at all." According to Ms. Jenkins, no one ever interviewed her about the Petitioner nor was she called to testify at trial. However, Ms. Jenkins admitted that the Petitioner never asked her to contact his attorney or talked to her about testifying on his behalf. The Petitioner's sister, Betty Shaw, also testified that she would have testified at trial that she had never known the Petitioner to be violent towards women, but no one ever asked her to testify on the Petitioner's behalf. However, Ms. Shaw admitted that the Petitioner never asked her to testify and that she never tried to contact trial counsel.
>
> * * *
>
> Trial counsel . . . testified that he sent the Petitioner a letter requesting the names of any witnesses that he should speak to. According to trial counsel, the Petitioner never provided him the names of Mr. and Ms. Jenkins, Ms. Shaw, or Ms. Mercer.

*Shaw*, 2013 WL 1385006, at *2.

The TCCA applied the two-part *Strickland* test to these facts and concluded that Shaw's attorney had not rendered ineffective assistance by failing to call Mr. and Mrs. Jenkins, Ms. Mercer, and Ms. Shaw to testify at the sentencing hearing:

> With respect to the Petitioner's claim that trial counsel failed to subpoena several character witnesses to testify at trial, the Petitioner admitted that he never

provided the names of the witnesses to trial counsel. Trial counsel testified that he sent the Petitioner a letter requesting the names of any witnesses the Petitioner wanted subpoenaed. Trial counsel cannot be faulted for failing to call these character witnesses when the Petitioner never asked him to. Accordingly, we affirm the post-conviction court's denial of post-conviction relief.

*Id.* at * 4.

Shaw has not shown that he is entitled to relief under the AEDPA on Claim 2. First, the TCCA's determination was not "contrary to" *Strickland,* 28 U.S.C. § 2254(d)(1), because the TCCA expressly invoked *Strickland* and applied its two-part test to the facts. *See Williams*, 529 U.S. at 406.

Second, the TCCA's ineffective-assistance determination was not based on an unreasonable determination of the facts or an unreasonable application of *Strickland*'s standards to those facts. *See* 28 U.S.C. §§ 2254(d)(1) and (2). The court's factual conclusions that trial counsel asked Shaw to provide the names of potential witnesses and that Shaw did not do so are supported by trial counsel's testimony and Petitioner's own admissions. The state court's factual determinations are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary, *see* 28 U.S.C. § 2254(e)(1), which Shaw has not submitted. Based on these supportable factual findings, the TCCA reasonably concluded that counsel did not perform deficiently by failing to call Mr. and Mrs. Jenkins, Ms. Shaw, and Ms. Mercer as character witnesses.

Because the TCCA's ineffective-assistance determination was not unreasonable, Claim 2 is DENIED.

3. Claim 3: Denial of Fair Trial and Impartial Jury

In Claim 3, Shaw insists that the trial court "denied [him] the right to a trial by a fair and impartial jury" when it "failed to undertake any sort of inquiry into" alleged prejudicial

statements made by juror Brooks "that were heard by other members of the jury." (ECF No. 1 at 4.) The claim is not reviewable on the merits because it is procedurally defaulted and the default is not excused.

Under the Sixth Amendment, a criminal defendant has a right to a fair and impartial jury. *United States v. Taylor*, 814 F.3d 340, 380 (6th Cir. 2016) (citing U.S. Const. amend. VI). However, Petitioner did not exhaust in the state courts the free-standing Sixth Amendment issue he now asserts in Claim 3. He raised no Sixth Amendment claim on direct appeal. (Direct Appeal Br., ECF No. 19-7 at 6.) And although he presented a free-standing Sixth Amendment claim in his post-conviction appeal, he did not challenge the trial court's failure to undertake an inquiry into statements Brooks allegedly made in front of other jurors. (Post-Conviction Br., ECF No. 19-16 at 20-22.)[3] *See Ambrose v. Romanowski*, 621 F. App'x 808, 814–15 (6th Cir. 2015) (holding that the petitioner had not fairly presented his habeas claim in state court where he "raised an ineffective-assistance claim in state court, but it was not the same claim" he asserted in his habeas petition). The time allowed under state law for Shaw to present his claim has passed. *See* Tenn. Code Ann. §§ 40-30-102(a), (c) (setting one-year limitations period for post-conviction relief) and Tenn. Code Ann. § 40-30-106(g) ("A ground for relief is waived if the petitioner . . . failed to present it for determination in any proceeding before a court of

---

[3] Even if the Sixth Amendment claim that Shaw now brings in this habeas proceeding can fairly be construed as encompassed by the free-standing Sixth Amendment claim he raised in his post-conviction appeal, the claim is still defaulted; the TCCA found that Shaw waived his free-standing Sixth Amendment claim by failing to raise it in a motion for new trial or on direct appeal. *See Shaw*, 2013 WL 1385006, at *4 (Under "Tennessee Code Annotated section 40-30-106(g)[,] . . . we conclude that the Petitioner has waived post-conviction review of his claim that he was denied his right to trial by a fair and impartial jury."). A Tennessee court's finding of waiver under Tenn. Code Ann. § 40-30-106(g) is an independent and adequate state law ground that generally will bar federal habeas review of the claim. *Hutchison v. Bell*, 303 F.3d 720, 738 (6th Cir. 2002).

competent jurisdiction in which the ground could have been presented.")  Shaw thus procedurally defaulted the claim.  *See Boerckel*, 526 U.S. at 848.

In his Reply, ECF No. 21 at 1-2, the inmate recites the holdings in *Trevino*, 133 S. Ct at 1918, and *Murray*, 477 U.S. at 496, apparently arguing that the procedural default is excused due to the ineffective assistance of post-conviction counsel and Petitioner's actual innocence.  The arguments are inadequate to excuse the default.  First, Petitioner merely strings together legal standards, offers no facts to support his theories, and does not identify the claims for which he is asserting cause for a procedural default.  The arguments are therefore fatally undeveloped.  *Cf. Dillery v. City of Sandusky,* 398 F.3d 562, 569 (6th Cir. 2005) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.")  Second, Petitioner cannot rely on *Trevino* to establish cause for his default of Claim 3 because *Trevino* only excuses, in narrow circumstances, a procedural default of an ineffective-assistance-of-trial-counsel claim.  *Trevino*, 133 S. Ct. at 1918.  Thus, Shaw's procedural default bars federal habeas review of Claim 3.  Claim 3 is DISMISSED.

4. Claim 4(A): Insufficiency of the Evidence to Convict

Petitioner contends that the evidence was insufficient to convict him of rape and sexual battery.  (ECF No. 1 at 4.)  On direct appeal, the TCCA rejected Shaw's argument and upheld his conviction and sentence.  *See Shaw*, 2013 WL 1385006, at *4.  Because he presented this issue to the TCCA, the claim was properly exhausted, and is therefore reviewable on the merits in this habeas proceeding.  *See Adams*, 330 F.3d at 402.

The Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979), provides the federal due process standard for evidentiary sufficiency in criminal cases and thus governs Shaw's claim.  *See Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (per curiam)

(*Jackson* applies to sufficiency-of-the-evidence claims on habeas review under § 2254(d)); *Appanovitch v. Houk*, 466 F.3d 460, 488 (6th Cir. 2006) (same). In *Jackson*, the Supreme Court announced that "the relevant question" "on review of the sufficiency of the evidence to support a criminal conviction," is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original).

By not requiring a reviewing court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt," but, instead, whether "any" rational trier of fact could have so found, the *Jackson* standard is deferential to—that is, "gives full play to"—the role of the trier of fact "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts." *Id. See also Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam) (under *Jackson*, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.").

The AEDPA adds a layer of deference to *Jackson*'s already deferential standard. By virtue of the AEDPA's command that federal habeas relief may issue only if the state court's decision is "contrary to," or "an unreasonable application" of the controlling federal law, 28 U.S.C. § 2254 (d)(1), or "based on an unreasonable determination of the facts," 28 U.S.C. § 2254(d)(2), a state court determination that the evidence satisfied the deferential *Jackson* standard is itself "entitled to considerable deference" by the federal habeas court. *Coleman*, 132 S. Ct. at 2065.

The TCCA applied *Jackson*'s evidence-sufficiency test to the record adduced at Shaw's trial:

> When the sufficiency of the convicting evidence is challenged on appeal, the relevant question of the reviewing court is "whether, after viewing the evidence in

the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see also* Tenn. R.App. P. 13(e) ( "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans,* 838 S.W.2d 185, 190-92 (Tenn.1992); *State v. Anderson,* 835 S.W.2d 600, 604 (Tenn.Crim.App.1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See State v. Pappas,* 754 S.W.2d 620, 623 (Tenn.Crim.App.1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace,* 493 S.W.2d 474, 476 (Tenn.1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State,* 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing *Carroll v. State,* 212 Tenn. 464, 370 S.W.2d 523 (1963)).

"A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn.1982).

For the purposes of this case, rape is defined as "unlawful sexual penetration of a victim by the defendant" accomplished with "force or coercion." Tenn.Code Ann. § 39-13-503(a)(1) (2006). "'Sexual penetration' means sexual intercourse, cunnilingus, fellatio, anal intercourse, or *any other intrusion, however slight,* of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body...." *Id.* § 39-13-501(7) (emphasis added). As our supreme court has explained, " 'sexual penetration in a legal sense' " occurs " 'if there is the slightest penetration of the sexual organ of the female.... It is not necessary that the vagina be entered or that the hymen be ruptured; the entering of the vulva or labia is sufficient.' " *State v. Bowles,* 52 S.W.3d 69, 74 (Tenn.2001) (quoting *Hart v. State,* 21 S.W.3d 901, 905 (Tenn.2000)).

"Sexual battery" is defined as "unlawful sexual contact with a victim by the defendant" accomplished with "force or coercion." *Id.* 39-13-505(a)(1). " 'Sexual contact' includes the intentional touching of the victim's ... intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's ... intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." *Id.* § 39-13-501(6).

The defendant argues that the evidence was insufficient to show beyond a reasonable doubt that he sexually penetrated the victim or that he intentionally touched her in any sexual manner. In support, he cites his testimony that he and the victim were involved in a struggle after she attacked him when he called her fat, as well as the victim's admissions that she did not call 911 or her mother, told her cousin that nothing was wrong, and testified at the preliminary hearing that she had not been penetrated. The State responds by arguing that the jury accredited the victim's testimony over that of the defendant, as was within its province.

We conclude that the evidence, viewed in the light most favorable to the State, established that the defendant, using force, intentionally touched the victim's breasts, buttocks, and pubic region for the purpose of sexual arousal or gratification and that his touching of her pubic region occurred under her clothing and included the penetration of her labia with his fingers. The victim provided great detail about the assault, relating how the defendant first made sexual advances, which she refused, and then physically attacked her by throwing her on the ground, groping her breasts and buttocks, and putting his hand inside her pajamas and underpants to penetrate her labia with his fingers. The victim explained that she changed her testimony with respect to whether she had been penetrated after receiving instruction from the prosecutor on what constituted penetration. She also demonstrated on both a diagram and an anatomically correct doll exactly where the defendant had touched her vulva. In sum, the victim's testimony, which was obviously accredited by the jury, was more than sufficient to sustain the defendant's convictions for rape and sexual battery.

*Shaw*, 2010 WL 3384988, at *4–5.

Shaw is not entitled to relief under the AEDPA on his evidence-sufficiency claim. First, the TCCA's determination was not "contrary to" *Jackson*, 28 U.S.C. § 2254(d)(1), because the state appellate court expressly invoked *Jackson* and applied its test to the facts. *See Williams*, 529 U.S. at 406.

Second, the TCCA's evidence-sufficiency determination was not based on an unreasonable determination of the facts or an unreasonable application of *Strickland*'s standards

to those facts. *See* 28 U.S.C. §§ 2254(d)(1) and (2). The jury implicitly found the victim to be credible and the TCCA appropriately refused to disturb the jury's credibility determination. *See Shaw*, 2010 WL 3384988, at *5. *See also Jackson*, 443 U.S. at 319 (the reviewing court should "give full play to" the role of the trier of fact "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate facts") The state court's factual determination is entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary, *see* 28 U.S.C. § 2254(e)(1), which Shaw has not submitted. Based on the victim's highly detailed testimony, the TCCA reasonably concluded that the jury's determinations that Petitioner had committed sexual battery and rape were sustainable under *Jackson*'s standard. *Shaw*, 2010 WL 3384988, at *5.

Because the TCCA's evidence-sufficiency determination was not unreasonable, Claim 4(A) is DENIED.

5. Claim 4(B): Admission of a Prior Consistent Statement Without a Limiting Instruction

Shaw asserted that the trial court erred by admitting a prior consistent statement of the victim without issuing a limiting instruction to the jury. (ECF No. 1 at 4.) He raised this issue on direct appeal to the TCCA. (Direct Appeal Br., ECF No. 19-7 at 6.) Relying on state law, the inmate argued that the hearsay statement should not have been admitted or, having been admitted, the judge should have issued a limiting instruction to the jury that the statement "could not be considered as substantive evidence but only in assessing the victim's credibility." *Shaw*, 2010 WL 3384988, at * 6. The TCCA rejected the claim under state law. *See id.* at *6-7.

The claim is not subject to review in this habeas proceeding. Shaw does not allege that the trial court's admission of the prior consistent statement without a specific limiting instruction

violated federal law.  "Errors by a state court in the admission of evidence are" generally "not cognizable in habeas corpus proceedings."  *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

Moreover, even if Claim 4(B) were construed as raising a federal claim, it is procedurally defaulted because Shaw's brief to the TCCA did not alert the appellate court to a federal-law argument and the time for raising the issue in the state courts has passed.  *See Baldwin v. Reese*, 541 U.S. 27, 32-33 (2004) (state habeas petitioner did not "fairly present" a federal claim to the state court where nothing in his state-court submission "alerted the court to the alleged federal nature of the claim"); *Shaw*, 2010 WL 3384988, at *7 (a "failure to request" a "limiting instruction upon the admission of the evidence" in the trial court  "results in waiver of the issue on appeal."); Tenn. Code Ann. §§ 40-30-106(g) ("A ground for relief is waived if the petitioner . . . failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented.").

Petitioner's arguments that the ineffective assistance of his post-conviction counsel and his actual innocence would excuse the default are inadequate for the reasons stated earlier: the arguments are fatally undeveloped and the ineffectiveness of post-conviction counsel may only excuse the procedural default of an ineffective-assistance-of-trial-counsel claim.  *Trevino*, 133 S. Ct. at 1918.  Claim 4(B) is DISMISSED.

6.  Claim 4(C): Excessive Sentencing

In Claim 4(C), Shaw states only that the "trial court erred . . . by imposing an excessive sentence."  (ECF No. 1 at 4.)  No argument based on federal law accompanies his allegation. Absent a federal-law challenge, sentencing is a "state concern only."  *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003).  Shaw's claim that his sentence is excessive is therefore "not [a] cognizable" federal claim.  *Id.* ("A state court's alleged misinterpretation of state sentencing

guidelines and crediting statutes is a matter of state concern only."); *see also Kissner v. Palmer*, 826 F.3d 898, 904 (6th Cir. 2016) (generally, "errors in the application of state sentencing guidelines . . . cannot independently support habeas relief").

Even if Claim 4(C) were construed as raising a federal issue, it is procedurally defaulted. He did not fully and fairly present a federal law claim regarding his sentence to the state courts; the only sentencing issue that the inmate presented on direct appeal was that the trial court erred when it applied the "private trust" enhancement factor set forth in Tenn. Code Ann. § 40-35-11(14). *See* Direct Appeal Br., ECF No. 19-7 at 17-22; *Shaw*, 2010 WL 3384988, at *8-11. Because Shaw may no longer raise a challenge to his sentence, *see* Tenn. Code Ann. §§ 40-30-102(a), (c), -106(g), he has procedurally defaulted the claim. *See Boerckel*, 526 U.S. at 848.

Shaw's undeveloped arguments that the ineffective assistance of his post-conviction counsel and his actual innocence would excuse the default are inadequate for the reasons stated earlier. Claim 4(C) is therefore DISMISSED.

7.  Claim 5: Ineffective Assistance Based on Trial Counsel's Failure to Warn Petitioner About the Lifetime Community Supervision Requirement

In Tennessee, an individual convicted of rape must receive community supervision for life. Tenn. Code Ann. § 39-13-524. Petitioner claims that his trial counsel rendered ineffective assistance by incorrectly advising him about lifetime community supervision:

> Counsel's advice to [Petitioner] implied that supervision of life would not apply if it was not discussed at the sentencing hearing or imposed in the original judgment, which was not sufficient to give him the required level of knowledge regarding the consequences of a guilty verdict of rape. Petitioner received uncertain advice from his counsel as to the nature of lifetime community service.

(ECF No. 1 at 4.)

Shaw did not present this issue to the state courts (*see* appellate briefs, ECF Nos. 19-7 and 19-16) and the time has passed for doing so. *See* Tenn. Code Ann. §§ 40-30-102(a), (c), -106(g). The claim is therefore procedurally defaulted. *See Boerckel*, 526 U.S. at 848.

In an attempt to show cause and prejudice to excuse his default, Shaw alleges that he first learned of the lifetime community supervision requirement from a prison law library clerk. (ECF No. 1 at 4.) The allegation is contradicted by the record. The sentencing hearing transcript shows that the trial court informed Petitioner that he was being placed on lifetime supervision. (*See* ECF No. 19-6 at 27.) In addition, the supervision requirement was set forth in Shaw's judgment. (*See* ECF No. 19-1 at 72) (citing Tenn. Code Ann. § 39-13-524.) Accordingly, because the record shows that the inmate knew of the supervision requirement as early as his sentencing hearing, he has not demonstrated cause for his failure to timely challenge his attorney's advice regarding the requirement in state court. Moreover, Shaw's cursory recitation of the *Trevino* standard in his Reply is inadequate to show ineffective assistance of post-conviction counsel to excuse the default, and he has not made any showing to support his claim that he is actually innocent of the crimes.

Shaw's procedural default thus bars federal habeas review of Claim 5. The claim is DISMISSED.

The Court having found that Petitioner is not entitled to habeas corpus relief, the petition is DENIED. Judgment shall be entered for Respondent.

## APPEAL ISSUES

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); FED. R. APP. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional

right.  28 U.S.C. §§ 2253(c)(2) & (3).  Although a COA does not require a showing that the appeal will succeed, *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003), a court should not issue a COA as a matter of course.  *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005).

In this case, there is no question that the petition should be denied for the reasons stated. Because any appeal by Shaw does not deserve attention, the Court DENIES a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit.  Fed. R. App. P. 24(a).  However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court.  *Id.*

In this case, for the same reasons it denies a COA, the Court CERTIFIES, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith.  Leave to appeal *in forma pauperis* is therefore DENIED.

IT IS SO ORDERED, this 15th day of February, 2017.

**s/ J. Daniel Breen**_____
CHIEF UNITED STATES DISTRICT JUDGE